May it please the Court, Mrs. L. Currie-Oriana, on behalf of Petitioner Joseph Hart, I'd like to reserve ten minutes of my time for rebuttal. Mr. Hart was deprived of the fair trial by the prosecution, failing to disclose Brady evidence about key witnesses in both the guilt and the penalty phases of his trial. Before I get to the substance of these claims, I'd like to address this Court's question about the impact of Montiel on this case, specifically footnote 13. Unlike Montiel, Hart agrees that the CSC's denial was education on the merits, and under EPA, what this means is that the Court must assess what the State Court knew and did. We know that the California Supreme Court looks at cases in a similar way to denial. The Court looks to determine if a person made a prima facie case, taking all their factual allegations as true, and comparing them with the record. That's the determination that federal courts must assess for reasonableness, to the extent that footnote 13 requires more. It contravenes the purpose of comedy and federalism and deference to the State Court process and shouldn't be applied in this case. I'd like to turn to the penalty phase Brady claim. In that case, here, Hart made a prima facie case that the prosecution failed to disclose key evidence that would have helped to impeach informant Randall Gresham. Randall Gresham testified at trial that he only received a five-year sentence reduction in exchange for his testimony against Hart. But Hart presented unrefuted evidence in post-conviction that, in fact, this deal was much larger than what was testified to by Gresham. He was facing being charged with numerous other robberies out of state, and part of the deal included that he would not be charged with these robberies, and that he would not be charged with a five-year prior. Not only did the prosecution not disclose that, but he didn't correct Gresham's testimony that that was the extent of the deal. And it was also material, because here we know that the jury focused on Gresham's testimony. That's the only readback that this jury requested, and the question of OOP was also on the mind of the jury, because they asked about it during deliberations. Because of those reasons, the state court's determination was unreasonable, and this court has so found in other cases, such as Maxwell v. Roe and Benn v. Lambert. And how do we know that the state Supreme Court didn't just think that because Gresham was already impeached, this additional evidence wouldn't have made that much difference? Your Honor, like in Maxwell and like in Benn v. Lambert, this was additional evidence with which Gresham could have been impeached. This just wasn't more cumulative evidence of the same kind. It was one thing for Gresham to testify that he was only receiving a five-year reduction. It was another thing for him to have revealed to the jury that he was afraid that he was facing life in prison. And for the defense to have been able to impeach him with him testifying falsely during those proceedings about the extent of the deal, and about him potentially being a government agent, which is what he signed in his 2002 declaration. In that declaration, he indicated that he was placed specifically next to Hart in order to get information to get an admission. And he also indicated that he made up the confession at the time that he testified against him. Can we talk about the procedural default issue? If I look at the first state habeas petition filed by Mr. Hart, that's November 6 of 1998, it says this petition is timely within the meaning of the court standard for the timely filing of petitions for habeas corpus as set forth in its habeas guidelines and in Wray-Clark. So it gives the impression that at least that Mr. Hart's counsel at this time thought that Clark set forth and the habeas guidelines set forth the timeliness rules. Your Honor, so at the time that Mr. Hart filed his initial habeas petition, Robinson, D.C. had just been decided three months earlier. So before that, the law had been Clark. But Robinson, D.C. specifically took on that issue of timeliness, specifying that Clark hadn't been clear. And so it was only after Robinson, D.C. was decided, then the court made major changes to the timeliness rules requiring that a petitioner specify as to each claim and each subclaim specific reasons as to why the claims were delayed, if there was a delay argument. Even though... And so, sorry, I was going to ask you what you think the difference was, because you said that they clarified, that Robinson, Gallego clarified Clark, but I don't think your brief really explained what you meant by clarified. So are you saying that the clarification was what you needed to put in your brief? Yes, that a petitioner needed to make a timeliness argument as to each and every claim and subclaim. That hadn't been a requirement before. And as I indicated in the briefing, the fact that Robinson, Gallego had just been decided three months earlier makes this a novel bar that hadn't been adequately established at the time that it was applied against Mr. Hart. So I guess I'm confused. If it's just a matter of what you put in your brief, why couldn't that have been fixed in three months? Well, it was fixed in three months, but when it was submitted, that was one of the reasons that counsel gave for why the court should accept it, and based on the new timeliness rules, it was we needed additional time to address the changes the court made. So these were all arguments that initial habeas counsel presented to the court at the time that they presented that initial habeas petition. But even if this court finds that the timeliness bar should apply, here there's a very clear way around it which is cause and prejudice. Here the prosecution's failure to provide this discovery was the continuing barrier to Mr. Hart having presented this claim earlier. Here counsel had actually, even though it's not required to under Brady, counsel had specifically asked for discovery about any deals or inducements being offered to any government witnesses as well as any pending criminal charges against that prosecution witnesses have. And this was discussed on the record, and the prosecutor agreed to provide this discovery. But you would agree that habeas counsel's negligence can't constitute cause. So what would be the cause here that would create the distinction between the two? The violation under Strickler v. Green. So it would be the continuing failure of the prosecution to disclose the evidence necessary to bring this claim. This was information that was exclusively in the possession of the prosecutor. How much time was there between when they actually got that evidence though and when they filed the claim? So the evidence was actually not provided to post-conviction counsel until 2007. The claim was actually filed in 1998, but it was filed without any support. It was raised basically, you know, we believe that this has happened, but there was no support. And actually at the time, the government represented, well these are conclusory allegations and the court should dismiss it. And I would submit to this court that under Banks v. Drecke, that also requires that this court find that there was a cause for the default in this case because it was, the government also represented that there was no additional ready discovery that could have been provided to petitioner. And it was only when the law changed and allowed for post-conviction counsel to get post-conviction discovery under California Penal Code section 1054.9 that counsel was able to request this discovery at a hearing and the Riverside Superior Court forced the DA's office to provide it to Mr. Hart. But you would agree that Mr. Hart raised at least the government agent argument as to Mr. Gresham in his direct appeal? Yes, Your Honor. In the direct appeal, that argument was raised, but again, because it was an appellate claim, there was no facts outside of the trial court record to support it. And normally those things are raised on state heaps for that reason because they require extra record support. When was it though that this happened that the court required them to give the discovery? What year? So the hearings happened in state court in 2006, and the prosecutor didn't provide it until 2007. But you had Mr. Gresham's first declaration prepared by the Public Defender's Office in 2002. You had his deposition testimony in 2003. So it seems, isn't it a bit tenuous to say that there wasn't enough before 2007? I mean, the Public Defender's declaration seems to be the key, and that was 2002. So in 2002, the public defender got this declaration from Gresham, but it didn't really talk about the extent of the deal. The declaration focused on these two other aspects of the Brady claim, which were that he was a government agent at the time because he was placed next to Hart in order to get information about him, and that he had failed and that he had made up the confession. And that's also what the deposition focused on because even at that time, the counsel didn't know that there was a fuller deal that had been testified to at trial. And the case law is very clear that the prosecutor can't hide information and that under cause and prejudice, this is something that this court shouldn't allow for the prosecutor to basically represent. You have everything, and then only later when post-conviction counsel learns you don't have everything, well now it's too late because you should have found this sooner. The case law says you can't engage in a game of hide and defense counsel shall seek. This is information that the prosecution was duty-bound to provide and failed to provide. And even at trial, you have Gresham saying that the prosecutor was mad at him because he had actually revealed that when he was initially charged, he was charged with attempted murder of a police officer, and then it was reduced to assault. And he made very clear that the prosecutor was mad at him for having said that he was charged with assault, with attempted murder, because he had only been charged with assault. So you see in this record where really he was coached by the prosecutor specifically as to what to say, and he didn't reveal the extent of the deal. And what you see in the 2003 deposition is he wrote to the AG's office expressing concern about what would happen to him if he took back what he had said in his trial testimony, and concern about him perjuring himself. And in the deposition, he again repeats that he talked about perjury and that he was not offered any, he was not given any specific assurances that he wouldn't be charged with perjury if he contradicted his trial testimony. So I hear you to be arguing that you believe an exception to procedural default applies here. So what is your prejudice argument? Is it the same as your Brady materiality argument or? Yes, Your Honor, it's the same as the materiality argument for the substantive claim. That here, had this information been provided, it would have made a difference in this trial, given that the McMahon murder was the centerpiece of the prosecution's case in aggravation, and yet we know that the jury considered it because that was the one thing that they asked for readback on, and the jury took three days in which to decide Mr. Hart's case. So it wasn't a foregone conclusion that they were going to sentence him to death. But the jury did hear that Gresham had a deal with the prosecution to get him to testify, and that they were dropping at least some charges. So am I right that we would have to decide that it was unreasonable for the state court to think that the additional evidence about a further deal wouldn't have made enough difference to the jury to be material here? Yes, Your Honor, and again, I would refer this court to Maxwell v. Roe and Ben v. Lambert, because in those cases, it was similar facts. In one, the prosecutor had not revealed an earlier deal. They had revealed the final deal that that person received, but not the earlier deal. And in that case, the court found that it was an unreasonable application of Brady to find that that wasn't material, because that was additional information that would have cast doubt on the testimony of the informant. Here, Gresham's testimony was the centerpiece of proving that Mr. Hart had killed McManus. He not only provided the motive for the murder, which was that he was afraid that she would reveal the confidence he had given her about prior sexual indiscretions, but also that he told Gresham that he had killed before and would kill again, suggesting that removing any possibility of a lingering doubt in the minds of the jury. But I guess that still leaves open in my mind the question of why this, I guess the newer information about the deal that Gresham got was, why should we find that that was so much more significant than what the jury already knew? Well, the jury had to assess his credibility. And for the jury to think, this is a guy who's only receiving a five-year reduction, and you're having to assess his credibility based on that, is much different from the jury understanding, this is a guy who was facing potentially 30 other robberies that he could be charged with and who believed that he was facing life in prison if he didn't make the deal. It definitely would have cast a bigger doubt on his motivation to testify against Hart. And as I indicated earlier, it also would have allowed the defense to impeach him with him testifying falsely about the extent of the deal. So it would be one thing to say, well, you got this deal, but another thing to say, and now you're lying about the deal, which is something that the defense was never able to argue to the jury. Can we talk about the McMahon murder as well? Why isn't the Gresham testimony also cumulative? I mean, in addition to the criminal charges that my colleagues have asked you about, they had the cable ties, they had the handcuffs with, you know, a bloodstain that matched McMahon and only 0.8% of the population. There's so much that the jury could have relied on separate from Mr. Gresham's testimony. So the McMahon murder took place in the Whitney compound, which was a unique place. This was not just Hart's house and backyard where things were found. This was a compound where numerous people lived and had access to. And all this other evidence that was found was evidence that anybody else who lived in that compound could have just as easily had access to. And here, there were other people who had made statements that implicated themselves in the murder. And one of the other things that the prosecutor failed to disclose is that you have this evidence that Hart had been grading his yard, and then you have handcuffs with blood on them found under freshly turned dirt. I mean, it's a pretty bad fact. Although handcuffs were never determined that that was actually McMahon's blood. And there was a dispute as to whether handcuffs were even used in this crime. So again, all the evidence was circumstantial, pointing to Mr. Hart's guilt. And you had, even at the time that this case was being presented against Hart in aggravation, the police were actively investigating other suspects at the same time. So if they were convinced that Mr. Hart committed this crime, why were they investigating other suspects at the same time? But he had literature marks on McMahon's arms that matched the handcuffs. I mean, I guess the question is, to qualify for the procedural default exception, you have to show actual prejudice. So even though we might say, yeah, okay, I mean, you know, but does it meet the standard of actual prejudice to qualify for the exception? Your Honor, here there was evidence that contradicted that Hart had committed this murder. The pathologist had testified that the killer was left-handed. And it was very clear that Hart was right-handed. There was other evidence at the scene that could never be attached to Hart. There were hyperfibers in the victim, that the victim was clutching, that were never attached to Hart. There was a lot of evidence here that didn't tie to him. And, but again, I come back to, here we know it's material because the jury relied on Gresham's testimony, asking for his right back. And that's why the district, the state court's denial was unreasonable, and it's also why this court should find the prejudice, under-causing prejudice, because the facts of this case are that the jury delivered for a long time. They were considering a law, and they said they wanted Gresham's testimony to go over and over again. Can I take you back to the Clark versus Robbins and Gallego issue? So I think you want us to hold that this, that somehow there was a difference enough between Clark and Robbins and Gallego that you wouldn't have been timely under Robbins and Gallego, but you'd know about Robbins and Gallego, but you would have been timely under Clark. Can you explain how that would be, and why we should rule for you on that issue? So the bar that was applied was the Robbins bar. And so the court has to assess that that was the bar that was applied. And, again, that bar had just. Did you just hear the court say Clark and Robbins now? Sorry, I may be remembering wrong. Is it just Robbins? I can't remember at the moment. I think it's Robbins and Clark. But even if it just said Robbins, explain to me how it was okay under Clark but not under Robbins. Or, sorry, the other way around. How it was okay under Clark but not under Robbins. Your Honor, when the court decided Robbins, it specifically laid out all the reasons that a person. So there were three different categories of how a person can be timely. It can be presumptively timely if you found within a certain time period. And then you can establish a cause in which you can be found to be timely even though you're past that window. And here, you know, Hart complied with the requirements of the court. Hart's counsel provided detailed reasons for why he was delayed, which included, you know, the. . . But that sounds like you're saying he complied with Robbins. So I guess the question is I thought what you wanted us to say is let's put aside Robbins because he didn't have notice of Robbins and consider it timely under Clark. But I think then the question is, well, why was it timely under Clark but not under Robbins? It seems like your answer is it was timely under Robbins, but that doesn't really explain then what the court did. I think what you wanted us to say is let's say that the court couldn't rely on Robbins. It wasn't adequate yet. It hadn't been decided long enough. So if that's true, I think we need to have you show us why it was timely under Clark. Something changed under Robbins, but we shouldn't consider that. But I don't think that's what it sounds like you're arguing. Your Honor, that wasn't an argument that I made in the briefing, and I'd be happy to brief the issue of whether the Clark bar on its own would have applied. But what the briefing focused on was, you know, the Robbins-Clark bar. And so to that extent, it was, well, was the Robbins-Clark bar clearly established and adequate? And here I see that the court is asking if we can parse out Robbins. Well, because Clark had been around for a long time. So Clark had been the law for years. So unless you can show us something changed that unfairly would apply to your client in those three months, then it seems like it was just untimely under Clark. I have to understand what changed and how that means. So we can, like, put aside Robbins, but he's okay under Clark. I'm having trouble understanding how that would be from what you're saying. So one of the reasons that Robbins and Goyega were decided was because Clark hadn't been applied consistently to petitioners. And so it wasn't clear to a petitioner when their petition would be found timely or untimely. And so Robbins and Goyega were attempting to clarify that issue of the Clark bar being applied inconsistently to petitioners. And so a person could have assumed under Clark that a petition like Mr. Hart's would have been timely because the California Supreme Court wasn't applying that bar in a consistent way to deny relief to a petitioner like Mr. Hart. Can I ask you, I mean, I still go back to this first state habeas petition which was, you know, filed by Phil Pennypacker who became a judge on the Santa Clara County Superior Court and was a very experienced criminal defense lawyer. And it just says that the petition is timely under the habeas guidelines in Ray Clark. It acknowledges that Robbins and Goyega were decided, but it doesn't say that that changed the Clark timeliness rule in any way. It doesn't draw any distinctions. So I'm still struggling with the same question of my colleagues. You know, his counsel at the time didn't think that Robbins and Goyega changed anything. They still thought that Clark was the rule that they had to comply with. Your Honor, I don't have the site in front of me, but in the briefs we did include the briefing. And counsel does talk about Robbins and Goyega and specifically argues why under Robbins and Goyega the petition should have been found timely. And I can look for that site. No, I have it here. You know, it just says on August 3, 1998, when the petition was essentially completed and awaiting final revisions, this court filed its opinion that in Ray Robbins and in Ray Goyega, in which it dealt at length with a number of general procedural issues relating to petitions for habeas corpus and capital cases, and in particular the question of the timeliness of claims advanced in such petitions. In view of the significance of the question to the presentation resolution issues presented in the instant petition, it was determined that a brief period for the revision of the petition was required in order to consider and take account of the teachings of these opinions. So it does, you know, try to attribute delay on that basis, but it doesn't say that that is a new rule or it's a different rule than either Clark or the habeas guidelines, which took effect in 1989. So that's still the puzzling piece here. Well, Your Honor, I'm happy to provide some more briefing on the differences between Clark and Goyega and why the Clark bar would have applied or would have been a bar to the timeliness to this claim. But again, I go back to even if this court thinks that the bar was applicable, that here Mr. Hart can show cause and prejudice under Strickler v. Green, and specifically I would also point to Banks v. Drecke. And I see my time is almost up, so I'll preserve the rest of my time for rebuttal. Thank you. Good afternoon, Your Honors. Deputy Attorney General Stephanie Chao on behalf of Appellee Broomfield. At the outset, when the California Supreme Court issues a summary denial on the merits, this court conducts a merits analysis under Section 2254D in keeping with Penn-Holster. In Penn-Holster, under the same procedural facts, the U.S. Supreme Court conducted a 2254D merits analysis, which was recognized by this court in Montiel, and the same process should be followed here. Turning to the Brady claim, the crux of that issue is, would this additional evidence of Gresham's motivation to testify have created a reasonable probability of a different result, such as to undermine confidence in the outcome? And the answer to that is no. Penalty phase counsel Harmon and the jury did know that Gresham was arrested for the serious offense of attempted murder of a police officer when he went to jail, and that very early on he decided he wanted to exchange information on Hart for leniency in that case. Gresham attempted to strike a deal in that attempted murder-arrest case and talked to investigators before he knew about the potential of additional charges. The additional impeachment information offered here is that additional robbery charges were potentially not filed. The jury already knew that Gresham's attempted murder here was reduced to an assault, and he also pled guilty to charges from another case that was added on in a later time for two armed robberies, auto theft, and firearms possession, all in exchange for a 10-year sentence. This additional impeachment evidence was unnecessary to know that Gresham's motivations here were self-preservation. His self-interest was evident, and as Harmon argued in closing, this was a man who would sell his mother to save himself. So you've jumped directly to the Brady claim not having merit and skipped over this whole Robbins-Clark situation with the timeliness. Do you have an argument about the procedural bar? Yes, the procedural bar here applies. The state court found this claim untimely under Clark and Robbins, which is independent and adequate under Walker v. Martin. Therefore, it is incumbent upon Hart to show cause and prejudice. So is Robbins doing any work here that Clark couldn't do alone? It is not. Walker v. Martin simply recognized that the timeliness bar was clearly independent and adequate, at least since the time of the Robbins decision, and his petition was so. I'm not sure this argument was in opposing counsel's brief, but the idea that Clark had not been consistently applied and so wasn't adequate for that reason, what you just said, is that your response to that, or do you have a different response to that? Well, it is the same response, which is that Walker v. Martin recognized that it was independent and adequate, consistently applied at least since the Robbins decision, which this petition was filed after. Therefore, since this claim is procedurally defaulting Why would that mean, though, that Robbins was necessary to make it adequate? And if so, if there were only three months, is that enough? Robbins was unnecessary. Hart's counsel would have been on notice since the time of Clark in 1993 as to what the timeliness rules were and whether he was in compliance with them or not. But in Bennett, the court noted that district courts were not applying Clark consistently. So why would that be enough notice? It was enough notice to notify his habeas counsel, and his habeas counsel did understand that his habeas petition would have been due within three months of the due date of his reply in the direct appeal. But if it wasn't consistently applied, it can't be adequate, right? So if it wasn't consistently, if Clark was not consistently applied, then it can't be inadequate in independent state court or the habeas relief in federal court, right? Yes, but it was recognized as adequate since the time of Robbins, which was decided before he filed his petition in this case. And it did not explain. Robbins wasn't firmly established, right, because it had only been around for three months when Mr. Hart filed his first state habeas petition. And Robbins was, he still does not explain why it took three additional months after the time of Robbins to file his claims, which he stated were already prepared before Robbins was decided. And because this claim is procedurally defaulted, Hart needs to show cause and prejudice to excuse the default. And for the same reasons that he cannot show materiality, he also cannot show prejudice to excuse the default. What about the cause issue, this idea that the prosecution was withholding the evidence that that counts as cause? Well, the cause and prejudice analysis parallels the Brady analysis. And as the state court would have presumed that suppression caused wrong in making its merits determination, then I'm turning to the Brady materiality and prejudice analysis. What about your opposing counsel said that was the only readback the jury asked for was the Gresham testimony? So it had to have been material to three days of deliberations. That's the only readback they wanted. There were two days of deliberation, but also the only – In the morning, right? In the morning.  That is three. Yes. But the fact that the jury requested readback of Gresham's testimony only indicates that it considered Gresham's testimony, which it should have, as it was relevant. I was considering it quite serious that they were focused on it. It could be that it focused on it. It could be that it simply was unable to hear Gresham's testimony as it was being given. There was a comment that it was hard to hear him during his testimony. But in any event, the jury was well able and should have considered Gresham's testimony as it was relevant and compelling. The accuracy of Gresham's testimony was not undermined by this additional impeachment evidence. It was corroborative of other evidence that was presented. The fact that Hart owned three handcuffs, the fact that he was told Sheila's chest was particularly well-developed for an 11-year-old, the fact that Hart had been grading his yard with a tractor that he had borrowed after Sheila's murder, and that he had dumped Sheila's body in a dumping place. All of those facts were corroborative and indicated he could have only received that information from Hart. And in any event, even if Gresham's testimony were to be discounted, there was still other independent evidence tying Hart to Sheila's murder. There were the cable ties that were found around his property, one in a plastic bag in the corner of his bedroom, matching the same cable tie found wrapped around Sheila's murder. Was the opposing counsel's argument that this was kind of a unique living situation, with a lot of people having access to these areas, to the property? The fact that there were other people who had access in addition to Hart still did not negate the fact that Hart was the last person to see her alive, that there was no struggle and Sheila would not have been known to have left her house with a stranger in the middle of the night. It does not explain why two of the handcuffs that Hart owned were found buried in freshly dug up dirt in his shed, one of which contained blood matching Sheila's blood type and a t-shirt fiber from the shirt she was wearing when she was killed. I'm sorry to go back to the procedural default issue, but is it the government's position that in order for any ruling to find procedural default here, that the court would have to find that Clark alone was an independent, adequate state procedural bar? No. It is to find that the state did apply its own law in finding the claim to be untimely, and timeliness is an independent and adequate procedural bar under Walker v. Martin since the time of Robbins, and the state court cited Clark and Robbins in finding this claim untimely. So you're saying any ruling should rely on both Clark and Robbins, even though Robbins was only decided three months before? Correct. The court cited both Clark and Robbins in finding the claim untimely. Okay. So you're not pushing for a ruling to say that Clark alone is sufficient to establish the procedural time bar here? No. Clark and Robbins are sufficient, and Hart was on notification since the time of Clark. But yes, both of those cases were cited to find the claim untimely. Okay. Coming back to the evidence that other independent evidence that showed Hart killed his 11-year-old niece, in addition to that crime itself, that was one of a string of other aggravating evidence that was presented in the penalty phase. So even apart from Sheila's murder, there was evidence that the circumstances underlying the crimes he was convicted of themselves were extremely aggravating. Hart drove two 15-year-old girls to a remote area under a pretext and separated them, leading Diane away, committed a violent attempted sexual assault on her, during which he shoved her face first into the ground and crushed her head in with a rock. Not having finished, he retrieved Amy, brought her to the same location, knocked her down with a rock when she tried to flee, and as she called out to Diane while he was tearing her clothes off, he told her, You're a funny kid. I'm about to rape you, and all you can think about is your friend. Hart then forced Amy to orally copulate him and then sodomized and raped her. His actions and remarks in the underlying offenses were cruel and callous in the extreme. In addition to that, it was also presented that Hart had committed five prior sexual violent assaults on five different women, targeting young women who were alone in their homes, forcibly assaulting them, sometimes with the aid of a knife. The first two of these crimes, he entered the home or apartment of two women and violently attacked them, though they were able to fight him off long enough to escape or to cry for help. In one of these instances, he was carrying a rope, wire, and knife in his pockets. In a third incident, he was caught prowling an apartment complex and attempting to open the window of a woman inside with the admitted intent to enter and rape her. Can I ask you another question? Just trying to get a sense of what authority should be relied on for whether the Clark-Robbins rule is independent. You cited Walker. If there's an argument that Walker didn't address independence, should the court then rely on Bennett? Or what's your view on whether Walker or Bennett is the right authority to cite for whether the Robbins rule is an independent, adequate state ground? I believe Walker, but again, I may have to refer back to the briefing or provide supplemental authority on that issue. As far as I understand it, Walker versus Martin did establish the adequacy of the time limit bar. Walker said that Martin doesn't have to dispute that the time limitation is an independent state ground, so it seems like it was not really an issue that was confronted in Walker or needed to be confronted. And it may not have been addressed in that case, but since the time of that case, it has not been disputed that timeliness has regularly upheld to have been an independent, adequate bar. And again, the minimal additional impeachment of Gresham did nothing to undermine the accuracy of his testimony, did nothing to undercut the other independent objective evidence that Hart killed his 11-year-old niece, and did absolutely nothing to undermine the seven other crimes in aggravation that the jury considered. After recounting the details of the crimes. Can we talk about Dr. Hunter for a second? I am a little bit wondering if we had a rule that if writing material was not memorialized in writing, but the prosecutors were aware of the problems and the potentially exculpatory information, if we required memorialization in writing, would that create an incentive for prosecutors then to delay memorializing the information that they know and could be exculpatory? It might if there was any evidence that there was some kind of systematic suppression or purposeful attempt not to memorialize certain evidence. The Hunter evidence, though, did not actually occur until after the time of Hart's trial. There was only one potential instance that in 1985, in a particular trial, Dr. Hunter testified, mistakenly transposed the location of a victim's injury from right side to left side and had to be refreshed with his own autopsy report. But this was not any kind of evidence that implicated his qualifications as an expert witness or his credibility or honesty. It was simply his inaccuracy in testifying while on the stand. And so there is no evidence that there was anything to, first of all, that nothing was memorialized until after Hart's trial, but even before then, there was no evidence that calling into question Hunter's qualifications.  But do you think that should be the rule, that it has to be memorialized in writing? It is not, but there does have to be some evidence that prosecutors knew or should have known of something impeaching about Hunter's qualities, qualifications, or credibility as an expert witness. So the government's position is it doesn't have to be memorialized in writing? Is that the government's position? Well, if there is evidence of something that prosecutors could reasonably have to have known or shown to have known, which just wasn't the case here. So are you saying if someone testified to a conversation, that would be enough? Yes. And coming back to the materiality of Gresham's, the Brady evidence regarding Gresham, there's no reasonable probability that the additional impeachment regarding Gresham would have affected the jury's verdict to impose death here. It seems like you've made this argument sort of in two layers. Like one is the additional aspects of the deal wouldn't have changed the fact that the jury already knew there was a deal. And then the second layer is Gresham's testimony didn't really matter anyway because there was all this other evidence and all this other reason to give the death penalty. Is one of those stronger than the other in your view? No. It is all to be considered together. So the materiality of this additional impeachment evidence has to be considered in the context of the entire case in penalty. And part of that is that it first of all was immaterial to determine whether Gresham was motivated by self-interest to testify. It also was immaterial to what Gresham testified to and whether that was accurate or independently corroborated. It was immaterial to the other evidence that showed Hart's involvement in Sheila's murder. And it was immaterial to the remainder of the penalty phase evidence showing extremely aggravating circumstances. That's where in my mind you have this problem perhaps that this Gresham's testimony was what the jury seemed to be focused on. And you're talking here about the murder of a child. So it's hard for me at least to fully believe that it doesn't matter more than some of the other testimonies that the jury heard. Not that it didn't matter, but the jury heard so much other testimony. It didn't matter more. Yes, and in addition to the underlying offenses which also involved the murder of a 15-year-old girl and rape, sodomy, and forced oral copulation of another 15-year-old girl. So in that context, this impeachment evidence was immaterial. And the state court reasonably applied federal law in denying this claim. And unless there are any additional questions, I am prepared to submit. Thank you, counsel. Thank you. I'd like to briefly go back to this question about much reality. Certainly another murder mattered. And it wasn't just another murder. It was the murder of Hart's 11-year-old niece who his own children played with. Nothing could have been more aggravating than having this other murder that happened just six weeks after the Harper murder come before the jury. And here, the defense was that the Harper murder had been an aberration. That Mr. Hart had redeeming qualities. He had served in the military. He was a good father. He was a good husband. The other prior crimes had been explained away as he had been without committing any further crimes for eight years after he had been released from Patton State Hospital. So to say for the state court to find that this evidence provided by Gresham directly putting in Hart's mouth that he had committed this murder and Harper's murder was certainly something that was material. And for the state court to find that it wasn't was unreasonable. I'd also like to talk briefly about the burden of proof in charge of the procedural default. Under Bennett v. Mueller, it is now the government's burden to prove that the bar applies, not the petitioner's. And unless there are any questions. I actually do have one more question. I've looked at all the habeas denials from the California Supreme Court just to refresh my recollection, and I believe that every time Robbins is cited, Clark is also cited in all three. So I think earlier you were saying really they only relied on Robbins, but it seems like they relied on Robbins and Clark. So can you point to any argument you made that Clark was not independent and adequate? Your Honor, I didn't brief this, but when Robbins, when the California Supreme Court took Robbins, it specifically said that the reason it was taking the case was because of how Clark had been applied inconsistently. So I think the California Supreme Court, in taking Robbins and Villego, itself acknowledged that Clark wasn't a bar that was being applied adequately. And as I said earlier, I'm happy to submit further briefing on it because it's not in the briefs, but that was the question that the California Supreme Court took on when it took these cases, Robbins and Villego. I don't know if there's any more questions. Thank you. Thank you. Thank you both sides for the helpful arguments. This case is submitted and we're adjourned for the day. This court for this session is adjourned for today.
judges: FRIEDLAND, KOH, THOMAS